

# LEASE – COMMON LAW

## THIS LEASE IS NOT GOVERNED BY THE VIRGINIA RESIDENTIAL LANDLORD TENANT ACT

This RESIDENTIAL LEASE ("Lease") is made on _____May 13, 2011_____
by and between _____Steven and Maria Packard_____
("Landlord") and _____Jennifer Hainin_____ ("Tenant")
who acknowledge by their initials and signatures below that in this real estate leasing transaction,
_____Coldwell Banker Residential Brokerage_____ ("Listing Company") represents the Landlord,
and _____Coldwell Banker Residential Brokerage_____ ("Leasing Company")
represents ☐ the Landlord OR ☐ the Tenant. (If the brokerage firm is acting as a dual representative for both Landlord and Tenant, with or without designated representatives, then the appropriate disclosure form is attached and made a part of this Lease.) In consideration of the mutual promises and covenants set forth below, and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

**1. PREMISES.** The Landlord leases to the Tenant and the Tenant leases from the Landlord, the residence and all improvements (to include all fixtures, appliances, equipment and systems) (the "Premises") described as follows:
Street Address: __10646 Moselle court_____ __Manassas__ Virginia,
Zip Code _____20112_____, Subdivision _____Coles Run Manor_____
Parking Space #_____, County/City _____Prince William_____, and if applicable,
Mail Box #_____.
If the Premises are a Condominium, Unit # _____, Condominium:_____,
Storage Bin #_____.

**2. LEASE TERM.** The Term ("Lease Term") will begin at noon on _____July 1, 2011_____,
and end at 5 pm on _____June 30, 2013_____ . Should Tenant fail to vacate as scheduled, the per diem rate will double.
This Lease Term ☒ shall ☐ shall not be extended automatically from month to month upon the same terms and conditions as set forth in this Lease ("Extended Term"). Prior to the expiration of the initial Lease Term or expiration of any Extended Term, either of the parties shall give the other at least __60__ days written Notice of intention to terminate this Lease. If this Lease is extended, __60__ days prior written Notice by either party shall be required to terminate this Lease. This Notice to terminate the Lease shall be received no later than the first day of the month and the tenancy shall terminate on the last day of the month.

**3. RENT.** The total rent for the initial Lease Term shall be $__69,600.00__. The first full month's rent for _____ in the amount of $__2900__ shall be paid prior to occupancy and is payable in certified funds, cashier's check or money order. Monthly installments of $__2,900.00__ are due in advance on the first day of each month beginning __August 1__, without notification, demand or deductions. If the Lease begins on other than the first day of the month, the rent shall be prorated with $_____ due on _____ (date) for the period of _____ through _____. Only one rent check will be accepted per property each month.

**4. LATE PAYMENT AND RETURNED CHECKS.** Installments of rent not received by the Landlord on or before the due date are late and a default under this Lease. If any installment of rent is not received by the Landlord within ___5___ days from the due date, the Tenant agrees to pay a late charge of $___290.00___. The Tenant also agrees to pay the Landlord an additional charge of $___35.00___ for each returned check. The Landlord has the right to require that all payments be made by money order, cashier's check or certified check and that the entire payment be made by one instrument payable to ☒ Landlord or ☐ Managing Agent.

**5. FAILURE TO PAY RENT.** Tenant's failure to pay any installment of rent or late charge when due is a default under this Lease. If Tenant does not pay rent within five (5) days after receipt of written Notice of non-payment and intention to terminate Lease, the Landlord may terminate this Lease. Unpaid rent for the entire remaining Lease Term shall become immediately due and payable. In this situation, the rent received by the Landlord from a new Tenant shall be credited to the accelerated rent. If the accelerated rent is for more than one year, it will be reduced to its present value. Upon termination, the Landlord shall be entitled to: (a) possession of the Premises, (b) any unpaid rent, additional rent, and late charges, (c) any damages sustained, (d) court costs and reasonable attorney's fees, and (e) all other remedies provided by law or equity.

**6. MANAGEMENT.** _____Jim Downs_____ ("Managing Agent"),
Office Address: __10432 Balls Ford Road Suite 120__   __Manassas__
Virginia, Zip Code ____20109____, Phone Number: ___703-501-3626___, Email:_____
is authorized to manage the Premises and collect rent on behalf of the Landlord and shall exercise all rights of the Landlord under this Lease.
If the Premises are not professionally managed, all references to Managing Agent are hereby deleted in their entirety and rent is payable to the Landlord at the following designated address:

_____
_____. Phone Number: _____
Email: _____. The Listing Company is acting only as rental Agent and has no liability or responsibility for property management, for the escrow funds deposited under this Lease after such funds are transferred to the Landlord, or for the obligations and agreements to be performed by the Landlord or Tenant under this Lease.

**7. APPOINTMENT OF REGISTERED AGENT BY NONRESIDENT LANDLORD.** Any individual nonresident of Virginia who owns and leases residential real property in Virginia shall have and continuously maintain an agent who is a resident and maintains a business office within the Commonwealth of Virginia. The Landlord designates:
Name: _____N/A_____ Email:_____
Street Address: _____Virginia,
Zip Code _____, Phone Number: _____, as the registered agent.

**8. TRUTHFULNESS OF THE RENTAL APPLICATION.** The Tenant warrants that the statements made on the Rental Application ("Application"), which are made a part of this Lease, are material representations that have been relied upon by the Landlord. If any material facts in the Application are untrue, the Landlord shall have the right to: (a) terminate this Lease, (b) hold the Tenant liable for any and all damages to the Premises, (c) exercise all legal and equitable rights and remedies, and (d) recover reasonable attorney's fees and costs and all costs incurred to reclaim the Premises and to rent the Premises to another tenant.

**9. USES.** Tenant will use Premises solely as a **single-family residence** for only those adults and children listed on the Application and those children born, adopted, or placed under the legal care of the Tenant hereafter, and for no other purpose. No portion of the Premises shall be sublet or assigned without the prior written consent of the Landlord. Occasional visits by guests, not to exceed two (2) weeks during any consecutive twelve (12) month period, are permitted without the prior written consent of the Landlord. The Tenant shall not use nor allow the Premises to be used for any disorderly or unlawful purposes and shall comply with all applicable laws, ordinances and Rules and Regulations of the Landlord or Association. This Lease may be terminated at the option of the Landlord in case of any nuisance, excessive noise, disturbance or conduct offensive to any other occupant of the building or neighborhood. Tenant expressly agrees not to allow controlled substances or illegal drugs of any type or paraphernalia used in connection with such substances on the Premises. The Landlord has the right to terminate this Lease where an immediate threat exists that materially affects the health or safety of either the Landlord or other tenants. For example, the sale or disposition of dangerous drugs or drug paraphernalia on the Premises shall be considered such an immediate threat. In such event, the Landlord shall give the Tenant written Notice of termination with the time of vacating to be commensurate with the urgency of the situation. The Tenant shall vacate and surrender possession of the Premises to the Landlord within the time period specified in the Notice of termination.

**10. PETS.** The Tenant and/or Tenant's guests shall not keep pets on the Premises without the prior written consent of the Landlord. Consent may be revoked if the Tenant does not obey all Association requirements, Landlord's rules and regulations, and local laws. The Tenant assumes all liability and responsibility for any and all damages caused by pet(s) and shall restrain or secure pets when access is needed. Written consent is hereby granted only for the pet(s) listed on the Application.

**11. HOME OWNERS', CONDOMINIUM ASSOCIATION OR COOP.** This property is subject to a ☑ Home Owner Association ☐ Condominium Association ☐ Cooperative
Tenant must obey the rules and regulations of the _____ Coles Run Manor /Service First
Association (the "Association") which are available to Tenant. Tenant's failure to comply with the requirements and/or rules and regulations of the Association shall constitute a breach of this Lease. The Tenant shall pay all costs incurred to cure such a breach. This Lease grants the Tenant the right to use the allowable common areas and facilities of the Association for the Lease Term, provided that the Tenant pays any additional user fees. The Landlord agrees to complete the necessary forms for the Tenant to obtain or use Association recreation facilities and services.
Tenant agrees to pay all move-in and move-out fees and elevator fees. Tenant acknowledges that the elevator will need to be reserved during Tenant's move-in and move-out. Tenant will call the Association at Phone Number ~~2083~~ ~~844~~ 7033926006 to schedule the move. Moving days and hours may be restricted. Tenant will comply with all maintenance programs of the Association and provide access for contractor inspections. Tenant agrees to register cars, bicycles and pets with the Association, as required.

**12. VEHICLE PARKING.** No motor vehicle, trailer or motorcycle shall be parked on the Premises without current license plates and jurisdictional stickers. All such vehicles must be in operating condition. Vehicles may be parked only in garages, driveways, assigned spaces, along the street, or as required by the Association rules or by local law.

*Recycle*
*Trash Tuesdays & Fridays*

**13. UTILITIES AND SERVICES.** Tenant must make any required deposits and pay for the following utilities and services: ☒ water ☒ sewer ☒ gas ☒ electricity ☐ trash removal ☐ lawn service ☐ security system ☐ other _____ during the Lease Term. The Landlord certifies to the Tenant that any fuel tank(s) are or will be full at the beginning of the Lease Term. The Tenant agrees to purchase utility service from _____, as selected by the Landlord. Prior to the release of the Security Deposit, Tenant shall provide to Landlord proof of payment of final utility bills.

**14. LANDLORD MAINTENANCE.** Except as otherwise noted, the Landlord shall maintain the Premises in good repair and tenantable condition and shall be responsible for repairs not due to the fault or negligence of the Tenant.

**15. FIXTURES AND APPLIANCES.** The Landlord shall provide as part of the Premises all existing built-in heating and central air conditioning equipment, plumbing and lighting fixtures, sump pump, installed wall-to-wall carpeting, and smoke and heat detectors, and those items listed below. Any fixtures and appliances provided in "As Is" condition need not be repaired, replaced or maintained by the Landlord. Those items listed "As-Is" are provided in as-is, where-is condition, with any existing faults.
Appliances: Dishwasher, Disposal, Dryer, Exhaust Fan, Humidifier, Icemaker, Microwave Range hood, Refrigerator, Stove, Washer
"As-Is" Appliances: _____

**16. SMOKE AND CARBON MONOXIDE DETECTORS.** The Landlord certifies to the Tenant that smoke detector(s) have been installed in accordance with the law. The Tenant must check smoke detector(s) periodically during the tenancy, replace batteries as needed and report any malfunctions in the smoke detector(s) to the Landlord in writing. Within five (5) days of receipt of written Notice from Tenant that a smoke detector is defective, Landlord, at Landlord's expense, shall provide for the service, repair or replacement of smoke detectors.
Tenant has the right to install carbon monoxide detector(s) at Tenant's sole cost and expense in accordance with the law. Tenant shall not remove or tamper with a properly functioning carbon monoxide detector, including removing any working batteries, so as to render the detector inoperative. The Landlord is not responsible in any way for the installation or use of a carbon monoxide detector installed by Tenant, and Tenant agrees to indemnify and hold the Landlord harmless from any and all claims or losses arising from the installation or use of the carbon monoxide detector.

**17. SECURITY DEPOSIT.** Prior to the beginning of the Lease Term, the Tenant shall deposit the sum of $ __5,800.00__ ("Security Deposit") to be held by _____ The Landlord _____, who will place it in a federally insured depository and retain any accrued interest. The Security Deposit is to ensure the Tenant's full compliance with all provisions of this Lease, including but not limited to, Tenant obligations with respect to property damage caused by the Tenant, guests, and/or pets. Tenant shall pay the costs of repairs, replacements or Landlord's other damages that exceed the Security Deposit. **The Tenant cannot use the Security Deposit for any payment of rent or other obligations.**

If the Tenant fails to comply with any provisions of this Lease, the Landlord may use any part of or retain all of the Security Deposit for the payment of the following: rent, any unpaid late or other charges, utilities, or any amount the Landlord may expend because of Tenant's noncompliance with this Lease, including any damages or deficiency in the rental of the Premises, whether accruing before or after re-entry by the Landlord.

Within forty-five (45) days after the termination of the tenancy and Tenant's vacating the Premises, the Landlord shall return to the Tenant the Security Deposit, less any deductions, provided the Tenant has performed all obligations under this Lease, returned all keys, passes and documents, and surrendered the Premises in the same condition as at the beginning of the Lease Term, except for reasonable wear and tear. Within thirty (30) days after termination of the tenancy and Tenant's vacating the Premises the Landlord shall provide an itemized statement of estimated deductions to be charged against the deposit. Unless proof of payment of final utility bills has been provided to the Landlord, a minimum of $100.00 may be withheld from the Security Deposit to pay any unpaid utility bills.

If during the Lease Term, including any extension or holdover, any part of the Security Deposit is used by the Landlord in accordance with the terms of this Lease or applicable law, the Landlord shall provide notification to the Tenant of such use and shall provide an itemized list of charges within thirty (30) days. The Tenant shall immediately deposit with the Landlord a sum equal to the amount used so that the full Security Deposit is on hand at all times during the Lease Term.

The Landlord shall provide notification to the Tenant of the name, address and telephone number of the new Managing Agent or new Landlord in the event of a change in rental management or the sale, transfer or assignment of the Landlord's interest in the Premises or in this Lease. In the event of a sale, transfer or assignment of the Landlord's interest in the Premises or this Lease, the Landlord shall transfer the Security Deposit and be released from all liability in connection with this Lease. At the end of the Lease Term, including any extension, the Tenant shall request the return of the Security Deposit from the new Managing Agent or Landlord.

**18. MOVE-IN INSPECTION.** Within five (5) days after the beginning of the Lease Term, the Landlord shall submit a written report to the Tenant itemizing the condition of the Premises at occupancy. This report shall be deemed correct unless the Tenant submits additional items in writing to Landlord within five (5) days after receipt of the report. This report is for information only and does not constitute an agreement to decorate, alter, repair or improve the Premises. Any request for repairs must be submitted separately in writing to Landlord

**19. TENANT OBLIGATIONS. Throughout the Lease Term, Tenant must keep Landlord informed of Tenant's telephone numbers.** The Tenant shall not destroy, deface, damage, impair, or remove any part of the Premises, nor permit any person to do so. The Tenant shall pay for any repairs or replacements made necessary due to deliberate, accidental or negligent acts or omissions of the Tenant, Tenant's family, guests, employees or pet(s). The Tenant is responsible for:

A. Maintaining the Premises in a clean and sanitary condition and disposing of all trash, garbage, and waste in sealed containers.

B. Using and operating all appliances, equipment and systems in a safe and reasonable manner. Tenant shall not overload any system. Tenant must drain outside water spigots each fall. In the event the

Premises' plumbing is frozen or obstructed due to the negligence of the Tenant, Tenant's family or guests, the Tenant shall pay immediately the cost of repairing frozen pipes or cleaning such obstruction and any additional costs associated with the repair (i.e. drywall, paint, carpets, etc.).

C. Furnishing and replacing all light bulbs and fuses as needed and changing furnace and air conditioner filters at least every two (2) months.

D. Clearing of all drains and toilets and maintaining caulking around tubs and showers, maintenance of all carpeting and flooring in a clean and good condition, replacement and payment for glass and screen breakage.

E. Maintaining the Premises in such a manner as to prevent the accumulation of moisture and the growth of mold. Tenant shall promptly notify the Landlord in writing of any moisture accumulation or visible evidence of mold.

F. Cutting, watering and maintaining the lawn and pruning shrubbery; promptly removing ice and snow from all walks, steps and drives; maintaining exterior gutters, drains and grounds free of leaves and other debris.

G. Promptly reporting in writing to the Landlord any defect, damage, or breakage. Failure to report shall make the Tenant liable for the repair of any additional damage. This provision does not require the Landlord to repair or correct such defects, breakage, malfunction or damage.

H. Paying the cost of any unnecessary service call and any costs incurred as a result of the Tenant failing to keep appointments with service persons that require access in order to make scheduled repairs. Any request for repair is understood to mean that Tenant has given permission to enter the Premises to make the repair.

I. Making any repairs, alterations, or additions required by any governmental authority, Association, insurance company or the Managing Agent due to the Tenant's use.

J. Controlling and eliminating household pests including but not limited to fleas, ticks, bed bugs roaches, silverfish, ants, crickets, and rodents during occupancy. Upon vacating the Premises, the Tenant shall be responsible for the costs of the elimination of all such pests and vermin.

K. Providing notification to the Landlord if the Tenant intends to be absent from the Premises for more than fourteen (14) days. If the Tenant fails to notify the Landlord, the Landlord may consider the Premises abandoned.

L. Not placing or displaying any sign, advertisement or notice on any part of the Premises.

M. Not creating or permitting any lien upon the Premises or Tenant's interest in this Lease. This Lease shall not be recorded by Tenant.

N. Providing a copy of the court order to the Landlord if a Tenant is granted possession of the Premises by a court of competent jurisdiction to the exclusion of any other Tenant or occupant. Tenant must also provide a key to any locks that are changed and/or security codes to any devices installed on the Premises.

**20. LANDLORD CONSENT REQUIRED.** The Tenant is required to submit a written request, including any plans for restoration, to the Landlord and obtain the Landlord's written consent for any of the following:

A. Remodeling, making any structural change, alteration, addition, or decoration, including without limitation, papering and painting.

B. Installing, attaching, removing, or exchanging appliances or equipment, such as air conditioning, heating, refrigeration, TV antenna or satellite dish, wood burning stoves, fireplace inserts or kerosene heaters.

C. Driving nails or other devices into walls, ceilings or woodwork (other than a reasonable number of picture hanger nails, which are permitted).

D. Affixing any object containing an adhesive backing to any surface or attaching plant hooks to the ceiling.

E. Re-keying locks, installing additional locks or security systems. The Tenant must provide the Landlord, and the Association where required, with a duplicate of all keys and instructions on how to operate all locks and/or systems.

F. Installing iron safes, water beds, aquariums over twenty (20) gallons, or any extra-heavy objects as reasonably determined by Landlord.

**21. INSURANCE REQUIREMENTS.** Throughout the Lease Term, the Tenant shall maintain an insurance policy which provides public liability coverage, protects Tenant's personal property and names the Landlord and Managing Agent as additional insured. Tenant shall provide Landlord with a certificate of such insurance, prior to occupying the Premises. The Tenant will do nothing and permit nothing to be done on or about the Premises that will increase the cost of or cause the cancellation of any fire or other insurance policy covering the Premises. All of Tenant's personal property located or stored at the Premises shall be at Tenant's sole risk. The Tenant shall indemnify and hold harmless the Landlord from any loss or damage to such personal property. The Landlord and/or the Association shall not be liable for any injury, damage, or loss resulting from any accident or occurrence in or upon the Premises.

If Tenant fails to provide a certificate of insurance, Landlord may obtain a policy covering Tenant's personal property and liability coverage. The cost shall be added either to the monthly rent or paid by the Tenant as billed.

**22. COSTS OF ENFORCEMENT, WAIVER OF EXEMPTIONS, SEVERABILITY AND STATUTORY REQUIREMENTS.**

A. The Tenant shall pay all costs, expenses, fees, and charges incurred by the Landlord in enforcing, by legal action or otherwise, any of the provisions of this Lease, including the payment of reasonable attorneys' fees, and the Tenant hereby waives the benefit of any homestead or similar exemption laws with respect to the obligations of this Lease.

B. If the Tenant fails to perform any of the provisions of this Lease (other than failure to pay rent when due), or upon abandonment of the Premises, the Landlord shall give written Notice to the Tenant specifying the particular non-compliance and the Landlord may terminate this Lease not less than thirty (30) days after Tenant's receipt of such Notice unless the Tenant remedies the non-compliance within __30__ days in a manner acceptable to the Landlord. In addition to any costs of enforcement, the Landlord shall be entitled to possession of the Premises, rents and other fees due, as well as rents due for the entire remaining Lease Term and any other rights or remedies to which it is entitled at law or in equity. If the Landlord does not pursue Lease termination when non-compliance is noted or accepts additional rents, such actions do not constitute a waiver or acceptance of the non-compliance. The Landlord reserves the right to take future action against non-compliance.

C. No waiver of any breach of any part of this Lease, or compromise or settlement relating to such a breach shall operate as a waiver of the provision itself, or any later breach.

D. All individual provisions in this Lease shall be severable. If any one or more such provision is determined by any court or administrative body to be unenforceable, or to be in conflict with any law of any applicable jurisdiction, such determination shall have no affect whatsoever on the remaining provisions of this Lease.

E. In the event that the provisions of any applicable statute apply to this Lease and are inconsistent with the provisions of this Lease, the provisions of the applicable statute shall control and this Lease shall be deemed to be amended to comply with such provisions.

**23. ACCESS TO THE PREMISES.** The Landlord or designated representative(s), upon reasonable notification to the Tenant and at reasonable times, may enter the Premises in order to do any of the following: (a) inspect the Premises, (b) make necessary or agreed upon repairs, decorations, alterations, or improvements, (c) supply necessary or agreed services, (d) place a "For Sale" or "For Rent" sign upon the Premises and a REALTOR® Lockbox/Keysafe and to show the Premises to prospective purchasers ninety (90) days prior to the end of the Lease Term or to prospective tenants sixty (60) days prior to the end of the Lease Term, (e) show property to prospective purchasers by appointment any time within Lease term. Buyer Agents and Tenant Agents are authorized to show the Premises under this section. Tenant will remove or secure any pet(s) on the Premises when property is on market or when repairs are scheduled.

Whenever possible the Landlord shall arrange for contracted workers to coordinate with the Tenant the time and date when workers may enter the Premises in order to accomplish repairs or services. It then shall be the Tenant's responsibility to ensure that these workers have access to the Premises at a time and date convenient to both Tenant and workers during the regular business hours of the firm doing the work. If the Tenant refuses to allow or prevents access, the Tenant shall bear any additional expense, such as after-hours or overtime fees, incurred by the Landlord. Refusal of the Tenant to allow access is a breach of this Lease. The Landlord may take legal action to compel access or may terminate this Lease. In either case, the Landlord may recover actual damages sustained and reasonable attorneys' fees. **In an emergency**, where it is impractical for the Landlord to give reasonable notification to the Tenant of the Landlord's intent to enter the Premises, or in case the Premises have been vacated, abandoned, or surrendered by the Tenant, the Premises may be entered by the Landlord or designated representative(s) without notification and without the consent of the Tenant.

**24. TRANSFER OF LANDLORD.** ☐ Landlord resides away from the Washington Metropolitan area. It is agreed that if the Landlord is transferred back to the Washington Metropolitan area by the Landlord's employer or is discharged from active duty with the Armed Forces of the United States or with the National Guard, the Landlord shall have the right to terminate this Lease by giving the Tenant at least ___60___ days' notice in writing whereupon the Tenant shall vacate and surrender possession of the Premises to the Landlord within the termination time period.

**25. TRANSFER OF TENANT.**
A. Under the Servicemembers Civil Relief Act of 2003 ("SCRA"), as it may be amended from time to time, and under Virginia law, a Tenant who is a member of the United States Armed Forces or of the National Guard serving full-time duty, or a Civil Service technician with a National Guard Unit ("Military Tenant") has the right to terminate this Lease if such Military Tenant (1) receives orders to depart thirty-five (35) miles or more (radius) from the Premises either for a permanent change of station or for temporary duty for more than ninety days, (2) is discharged or released from active duty or from full-time duty or technician status, (3) is ordered to report to government-supplied quarters resulting in the forfeiture of basic allowance for quarters, or (4) after entry into military service.

The Military Tenant may terminate this Lease by serving Landlord with written Notice of termination stating the date when termination will be effective. The date of termination shall not be less than thirty (30) days after the first date on which the next rental payment is due following delivery of the written Notice. In addition, the termination date shall not be more than sixty (60) days prior to the date of departure necessary to comply with the official orders or any supplemental instructions for interim training or duty prior to the transfer. Military Tenant shall attach to Notice of termination a copy of the orders, official notification of orders, or a signed letter from the commanding officer confirming the orders.

B. Tenants who are not Military Tenants have the right to terminate this Lease if transferred fifty (50) miles or more (radius) from the Premises by the employer stated on the Rental Application. The termination shall be effective on the last day of the second calendar month following the month in which the Landlord receives the Notice of termination. The Tenant shall provide a copy of the Tenant's transfer letter and/or orders, the final month's rent and the following termination or cancellation fee: (1) One (1) month's rent if the Tenant has completed fewer than six (6) months of the tenancy as of the effective date of termination, OR (2) One-half (½) of One (1) month's rent if the Tenant has completed six (6) months or more of the tenancy as of the effective date of termination.

**26. LANDLORD'S INABILITY TO DELIVER POSSESSION TO TENANT.** If Landlord is unable to deliver possession of the Premises to Tenant on the commencement date of this Lease through no fault of Landlord, Landlord shall not be liable to Tenant for any damages other than to rebate any rent paid by Tenant for such portion of the Term during which the Premises are not delivered to Tenant. If Landlord cannot deliver possession of the Premises or provide Tenant with an alternative residential dwelling unit acceptable to Tenant within fifteen (15) days after the commencement date of this Lease, this Lease may be terminated by either Landlord or Tenant by giving Notice to the other as provided herein.

**27. EARLY TERMINATION OF OCCUPANCY** Except as provided in Paragraph 25, the Tenant shall not be released from liability for rent and other charges due under this Lease unless the Landlord agrees in writing to release the Tenant from such liability. Tenant's vacating the Premises prior to the end of the Lease Term will not cancel any claims Tenant or Landlord may have arising out of events occurring during the Lease Term or during any holdover by Tenant.

**28. BANKRUPTCY.** Subject to the requirements of the applicable law, in the event the Tenant is adjudicated a bankrupt, (or makes an assignment for the benefit of creditors), this Lease, at the option of the Landlord, shall terminate upon thirty (30) days written Notice and the Premises shall be surrendered to the Landlord, who reserves the right to repossess the Premises subject to the applicable provisions of law.

**29. CONDEMNATION.** In the event that the Premises or any part of the Premises is taken by any authority exercising the power of eminent domain, this Lease shall terminate as of the date possession shall be taken by the condemning authority. The Tenant waives all claims against the Landlord or any condemning authority due to the complete or partial taking of the Premises, and shall not be entitled to receive any part of any award that the Landlord may receive.

**30. DEATH OF A TENANT OR LANDLORD.** If the Tenant(s) or Landlord(s) should die during the Lease Term, the surviving Tenant/Landlord or the estate of the decedent may terminate this Lease by giving thirty (30) days written Notice and a copy of the death certificate to the other party. This right of termination of the Lease must be exercised within ninety (90) days following the death of the party.

**31. FIRE OR CASUALTY DAMAGE.** In the event the Premises are damaged by fire or casualty the Tenant must promptly notify the Landlord. If the Landlord determines that the damage does not render the Premises substantially impaired or in need of repairs requiring Tenant to vacate the Premises, Landlord shall repair the damage within a reasonable period of time after notice from the Tenant. The Tenant must continue to pay the rent during the period of the repairs. If the Landlord determines that the Premises are uninhabitable, this Lease shall automatically terminate. If Landlord reasonably believes that the fire or casualty was caused by Tenant, or Tenant's family, guests, employees or pets, the Tenant shall not have the right to terminate this Lease and the Tenant shall be liable for the rent through the Lease Term.

**32. SALE TO TENANT.** Tenant is notified that there may be a commission due under a separate brokerage agreement if Tenant should purchase the Premises. This paragraph does not give Tenant an option or right to purchase the Premises.

**33. MOVE-OUT INSPECTION.** Tenant has the right to be present at the inspection. The Landlord, within five (5) days of receipt of Notice of the Tenant's intent to vacate the Premises, shall make a reasonable effort to advise the Tenant of the right to be present at the Landlord's inspection of the Premises, which will take place within seventy-two (72) hours after the Tenant's departure. Tenant shall advise Landlord in writing of the intent to be present at the inspection. If Tenant fails to make such a request Landlord will proceed to do the move-out inspection without Tenant being present.
The inspection is made to determine what portion of the Security Deposit will be returned to the Tenant and whether the Tenant may be liable for damages exceeding the amount of the Security Deposit. **Prior to the Inspection, the Tenant shall:**
A. Have carpets, gutters and chimney(s) cleaned by a professional company acceptable to the Landlord and provide copies of all paid receipts.
B. Have the Premises professionally treated for fleas and ticks if pets have been present and provide a paid receipt.
C. Eliminate all household pests and vermin from the interior of the Premises.
D. Change all air filters on furnace and air conditioning units. Provide evidence from the company selected by the Landlord that the fuel tank(s) are refilled.
E. Ensure that the Premises, including kitchen, baths and all appliances, floors, walls and windows, are thoroughly cleaned, that grass is cut and trash is removed.
F. Have all light bulbs and smoke detectors in working order.
G. Return all keys, garage door openers, passes and documents provided.

**34. SUBORDINATION.** This Lease is and shall remain subject and subordinate to all mortgages or deeds of trust now or hereafter affecting the Premises or the building in which the Premises are located and any modifications, renewals, extensions or replacements to such mortgages or deeds of trust. Although the subordination provision of this section shall be deemed automatic, the Tenant shall, within five (5) days after the request, execute any documents requested by the Landlord to confirm such subordination. If the Tenant fails to do so, the Tenant irrevocably appoints the Landlord as the Tenant's attorney-in-fact to execute the documents on behalf of the Tenant.

**35. NOTICE.** Any Notice ("Notice") provided for or permitted in this Lease to be given by one party to the other shall be in writing and shall be delivered either by U.S. mail, return receipt requested, or by hand delivery and shall be deemed to have been delivered either three (3) business days after the date if mailed, or the date such Notice is hand delivered.

**36. LEAD BASED PAINT.** Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not maintained properly. Lead exposure is especially harmful to young children and pregnant women. The Premises ☒ were not OR ☐ were built before 1978. If built before 1978, the **Lead Based Paint Disclosure** and **EPA information book "Protect Your Family from Lead in Your Home"** are attached.

**37. MISCELLANEOUS.** The conditions contained in this Lease are binding on, and may be legally enforced by the parties, their heirs, executors, administrators, successors and permitted assigns, respectively. The captions and headings are for convenience of reference only. This Lease contains the final and entire agreement of the parties and neither they nor their Agents shall be bound by any terms, conditions, statements, warranties, or representations, oral or written, not contained in this Lease. Any provision of this Lease may be modified, waived or discharged only in writing signed by the party against which enforcement of such modification, waiver, or discharge is sought. Wherever the context requires, the singular number shall include the plural and the plural the singular, and the use of any gender shall include the other gender. Any provision of this Lease that requires the payment of "attorney's fees" or "reasonable attorney's fees" shall only be valid to the extent permitted by law.

**38. COUNTERPARTS.** This Lease may be executed in any number of copies or by Fax, or email, each of which shall be considered an original but all of which together shall be the same Lease.

**39. ATTACHMENTS.** The following are attached and made a part of this Lease:
☒ Pet Addendum  ☐ Lead Based Paint Disclosure.  ☐ Other: _____
☐ EPA booklet "Protect Your Family from Lead in Your Home"

**40. DIPLOMATS.** This Lease is void if the tenant is the head of a diplomatic mission or a member of the diplomatic staff of a mission, or a family member of a diplomatic staff of a mission, or administrative and technical staff or their family which entitles them to the diplomatic immunity accorded to such persons under the Vienna Convention on Diplomatic Relations **unless** the diplomatic immunity accorded by law has been waived in writing by an authorized representative of the sending government. Tenant represents to the Landlord that he/she is ☐ or ☒ is not such a person.

**41. WAIVER OF RIGHT TO TRIAL BY JURY.** Both Landlord and Tenant hereby waive the right to trial by jury in any action, proceeding or counterclaim brought by either party against the other arising out of or in any way related to this Lease.

**42. DISCRIMINATION.** Landlord and Managing Agent shall abide by all applicable Fair Housing Laws and Regulations.

**43. STATUTORY NOTICE TO TENANT.** Tenant shall exercise whatever due diligence Tenant deems necessary with respect to information concerning sex offenders registered under Chapter 23 (sec 19.2-387 et seq.) of Title 19 of the Virginia Code. Such information may be obtained by contacting the local police department or the Department of State Police, Central Records exchange at (804) 674-2000 or www.vsp.va.state.us/.

**44. ADDITIONAL TERMS.**
1) The owners agree to give the tenants the first right of refusal to purchase the home. 2) If the tenants do purchase the home the sellers agree to credit the tenants $600 per month of their rent that they may use either for their down payment or closing costs. 3) The purchase price is to be agreed to between the owner and the tenants no more than 60 days prior to the closing of the home. The price should be determined using comps in the neighborhood that are no more than 90 days old. The purchase may be done anytime during the lease period as long as both owner and tenant agree on the purchase price. 4) There will be an option to extend the lease for an additional 2 years with an increase to the rent equal to 2.5% per month for each year extended. 5) Tenants agree to not smoke inside the home during the rental period.

**TENANTS SIGNING THIS LEASE SHALL BE JOINTLY AND SEVERALLY LIABLE.**

LANDLORD:

5/20/11 / [signature]
Date        Signature

5-26-11 / MPackard
Date        Signature

___/_____
Date        Signature

TENANT:

5/21/11 / [signature] Hanin
Date        Signature

___/_____
Date        Signature

___/_____
Date        Signature

© 2009 Northern Virginia Association of REALTORS®, Inc.
This is the suggested form of the Northern Virginia Association of REALTORS®, Inc. ("NVAR"). This form has been exclusively printed for the use of REALTOR® and Non-Resident members of NVAR, who may copy or otherwise reproduce this form in identical form with the addition of their company logo. Any other use of this form by REALTOR® and Non-Resident members of NVAR, or any use of this whatsoever by non-members of NVAR is prohibited without the prior written consent of NVAR. Notwithstanding the above, no REALTOR® or Non-Resident member of NVAR, or any other person, may copy or otherwise reproduce this form for purposes of resale.

# PET ADDENDUM

This addendum is made to a DEED OF LEASE dated May 13, 2011 by and between Steven & Maris Packard ("Landlords") and Jennifer Hainin ("Tenants") for property at 10646 Moselle Court Manassas VA 20112

It is understood and agreed that Tenant has 1 Dog and will post a see lease pet deposit. This deposit is reflected in paragraph 17 of the Deed of Lease as part of the security deposit figure.

It is further understood and agreed that said deposit will be held until the Tenant has vacated the premises and an inspection of the premises has been completed. If there are any damages caused by the pet, appropriate deductions will be made. If damages exceed the amount of the pet deposit, landlord reserves the right to deduct the additional charges from the security deposit set forth in this Deed of Lease. Having a pet is a privilege, and the landlord reserves the right to revoke this privilege if the following rules and regulations are not met.

a.  Tenant agrees to arrange for and pay the costs of having the house de-flea and de-tick by a professional exterminator at the termination of occupancy. A paid receipt must be provided before deposit is returned.
b.  Tenant agrees to arrange for and pay the costs of having the existing carpeting in the house professionally cleaned and deodorized at the termination of occupancy. A paid receipt must be provided before deposit is returned.
c.  Tenant agrees to assume all liability and responsibility for any damage to the property caused by pets, such as odor and damage to carpets, screens, glass and frame.
d.  Only the described pets owned at the time of occupancy are permitted. No other pets are allowed without approval.
e.  Pets must be licensed with the local authorities (county or city ordinance).
f.  Pets may not be permitted to run loose (also a county or city ordinance).
g.  Tenant must comply with any additional pet ordinance enacted by the local authorities.
h.  Tenant shall promptly remove any pet excrement and dispose of in a sanitary manner.
i.  Pets must not interfere with the quiet enjoyment and convenience of neighbors.
j.  Pets must not be allowed to damage property. Tenant takes full responsibility for all damages.

Failure to comply with these provisions shall be a breach by the Tenant of the provisions of the Deed of Lease and shall make the Tenant undesirable and subject to such legal action as landlord may deem necessary.

DATE:    LANDLORD:                           DATE:    TENANT:

5/24/11  [signature]                         5/11/11  [signature]
5/20/11  [signature Packard]

I

## PROPERTY MANAGEMENT AGREEMENT

This agreement is made on _May 26 2011_ (date) between Jim Downs and _Steven & Mary Packard_ (Landlord/Owner) who agrees to advise Agent promptly of any change of address, telephone number or email address, or any other contact information.
Phones: Home: _940-882-1006 - 1007_ Office: _____
Current Address: _10646 Moselle ct_
_Manassas VA 20112_

1. The Landlord appoints and grants Agent the exclusive right to manage: _10646 Moselle ct   Manassas VA 20112_
("Premises"), which is part of _Coles Run Manor_ Owners Association.
Landlord will provide the Rules and Regulations to the Agent The **term** of this Agreement shall be for an initial period of __ONE__ years (the initial term) beginning on _July 1_ 20_11_; and ending the last day of _June 30_ 20_12_. This Agreement shall be automatically renewed from year to year unless/until terminated or the property is sold.

The NVAR Property Management Information Form ("PMIF) is attached and made a part of this Agreement

☒  If this box is checked, Agent is to lease Premises, and the NVAR Exclusive Right to Lease form is attached and made a part of this Agreement.
☐  If this box is checked, the Landlord agrees to pay the Agent   Six % of sales price   if the Premises are sold or exchanged during the term of this Agreement.

2. Landlord grants to Agent the authority and power at Landlord's expense and In Landlord's name to perform with diligence the following normal management services:

A. To collect all rents in accordance with the Leases and to keep records of the receipts and expenditures for the Premises and to deposit all Landlord funds collected by Agent in a separate escrow account in a federally insured institution in Virginia. Agent shall not be held liable In the event of a bankruptcy or failure of the depository.
B. To make inspections of the Premises at time of occupancy, when Tenant vacates, and at such other times as the agent deems advisable.
C. To keep accurate records of the receipts, expenditures and charges for Premises and furnish Landlord with a statement.
D. To terminate tenancies and to sign service contracts and HOA/Condo Association proxies and serve Notices, to institute and prosecute actions to evict Tenants and to recover possession of the Premises; to sue for and recover rent' to settle, compromise and release such actions or suits, or reinstate such tenancies using guidelines provided by the Landlord or after personal consultation with the Landlord.
E. To negotiate, prepare and sign all leases, and to cancel or modify existing leases. The Agent shall sign all leases as Agent for the Landlord. No Lease shall be in excess of _2_ year(s) without approval of the Landlord.
F. To make or cause to be made all ordinary repairs and replacements necessary to preserve the Premises and to make all alterations necessary to comply with Lease requirements, governmental regulations or insurance requirements, to arrange for necessary decorating of the Premises, to enter into agreements for all essential repairs, maintenance, utility services and other services to and for the Premises, to purchase supplies and to pay all bills as provided in the PMIF.   Any cost in excess of $ 300.00   must be approved by the Landlord in advance except in an emergency.

NVAR-1017-2/01            Page 1 of 4                     Landlord
Agent _____

im|i<i»Benel»MIBiiMAl"Cortnrt™v4J0<ofl<^
nl"<iA»<ro"OREEMEM^
tolmUtolkiflofAultiContnM™lllfcamdfUriastaC(tt<^BataStMera.l^^                                       CSPro9riraRl»WCWVVWi<J»^^gtMmc
                                                                                                      U<ebyofhaib»vMl^oHe"rtool^htlll»under'ra»1TU.S.C.|101.

3. **Compensation:** As Compensation for the above normal management services, Landlord will pay Agent a fee of $ __NA__ per month or ~~9%~~ of the monthly rent. This fee shall be deducted from the rent when collected from the tenant and the balance shall be direct deposited to the landlords account.
   Account to be deposited into is:

_____

_____

4. **Other Service and Fees:** For other services beyond the normal management duties Landlord agrees to contract Agent as follows:

| SERVICE | $ FEE | % OF MONTH RENT | % TOTAL EXPENSE | OTHER |
|---|---|---|---|---|
| Preparing Premises for sale or for rent or for the re-occupancy of Landlord | TBD | — | | |
| Managing during vacancy | 50.00 | — | | |
| Managing a furnished rental | TBD | — | | |
| Appearing in court | N/A | — | | |
| Insurance claim coordination | TBD | — | | |
| Attending HOA/Condo meetings | N/A | — | | |
| Obtaining multiple bids | TBD | — | | |
| Acting as an Attorney in Fact | N/A | — | | |
| Lease renewal or extension | | ~~25%~~ | | |
| | | | | |
| | | | | |
| Making scheduled payments on trust, mortgage, Condo/HOA as shown on PMIF from Landlord's account. | NO CHARGE | — | | |

5. Agent shall not be responsible for the default or any consequence in the terms of any trust or mortgage or payment in case the disbursements are in excess of the receipts, the Landlord agrees to pay such excess promptly. The Agent is not obligated to advance its own funds on behalf of the Landlord.

6. **Expense reimbursement:** Agent shall be reimbursed for actual costs of materials or services expended on behalf of Landlord. Such services shall include, but not be limited to: Long distance telephone or copying charges, postage, key duplication, faxing, mileage, duplicate/reprinting statements, and advertising.

7. **Landlord and Agent mutually agree that:**
   A. Landlord will provide the Agent with all current warranties, service contracts, and the names and phone numbers of any tradespeople Landlord wants the Agent to use for routine service. Agent will attempt to use these contractors. Landlord will provide Agent with a list of known defects which may affect habitability.

NVAR-1017-2/01                          Page 2 of 4                          Landlord _____
                                                                             Agent _____

B. Landlord shall be responsible for obtaining and maintaining any rental licenses required by any governmental entity. Landlord represents that the Premises are in compliance with local zoning and building codes. Smoke detectors are installed as required. The building ☐ was or ☒ was not built prior to 1978. Lead based paint tests ☐ have (copy attached) ☐ have not been performed. Radon tests ☐ have (copy attached) ☒ have not been performed.

C. Landlord will provide Agent with copies of fire insurance policies and carry public liability insurance with a minimum coverage of $ 300,000.00 naming the Agent as additional insured. Unless the Landlord provides a certificate of coverage to the Agent within 30 days, the Agent may contract for such coverage at the Landlord's expense. Coverage for code enforcement, water damage, flood or sewer backup, and rent replacement are also suggested. Landlord will provide vandalism coverage for any Premises vacant more than 30 days.

E. Landlord shall Indemnify and hold harmless Agent from all costs, expenses, suits, liabilities, damages and claims of every type, unless the Agent is adjudicated to have been negligent Landlord shall indemnify and hold harmless Agent from all claims arising from bankruptcy or foreclosure against Landlord. The Landlord shall pay all settlements, judgements, damages, liquidated damages, penalties, forfeitures, court costs, collection fees, litigation expenses and reasonable attorney's fees for suits initiated or defended on his behalf.

F. Landlord shall pay all expenses incurred by Agent in any proceeding or suit involving an alleged violation by the Agent or Landlord of any constitutional provision, statute, law, or regulation pertaining to fair employment fair credit fair housing, disability access, or environmental protection during the Agent's performance of duties under this Agreement unless the Agent is adjudicated to have personally, and not In a representative capacity violated the law, statute or provision. Agent is not required to employ counsel to represent Landlord in any such proceeding or suit.

8. **Resident Agent for Non-Resident Landlord:** Any individual nonresident of Virginia who owns and leases residential real Property consisting of more than four units in Virginia shall have an Agent who is a resident and maintains a business office within the Commonwealth of Virginia. The Landlord designates:
Name: Jim Downs
Address: 10432 Balls Ford Road Suite 120 Manassas VA, 20109
Phone: 703-501-3626 as the Resident Agent

9. **Contact Person:** If Landlord is a partnership, trust corporation or other entity, or if Landlord consists of two or more individuals, the Landlord agrees that the following designated individual shall have the authority to act on behalf of the entity for all purposes of this Agreement and that notice by Agent to this individual shall constitute notice to Landlord:
Name: _____
Address: _____
Phone: _____

10. **Tax Reports:** Landlord ☐ is ☒ is not a nonresident alien. Landlord ☐ is ☒ is not a resident of Virginia. Landlord Is responsible for filing the appropriate forms with the Internal Revenue Service (IRS) and for non-residential property owners with the Virginia Department of Taxation.

11. **Termination:**
A. This Agreement may be terminated by either Party with 30 days Notice. In the event Landlord terminates this Agreement during the original term or any subsequent renewal period, or in the event of a foreclosure or sale, Agent shall be entitled to an early termination fee equal to 6 % of all gross rents due under the remaining Lease term as of the effective date of termination. Agent shall forward Tenant's security deposit to Landlord and Notice of mailing to Tenant As of mailing, Agent shall have no further obligation or liability concerning the security deposit. Landlord's reserve account shall be distributed within 60 days after termination, less any outstanding invoices, obligations and the early termination fee, along with an accounting of funds. Should there be any outstanding obligations against the Landlord's account or a deficit in that account, any amounts received by Agent shall be applied first to satisfy those obligations and then disbursed to Landlord. Landlord waives all protest and defenses against Agent for these disbursements. Landlord agrees to remit immediately to Agent all monies due Agent in accordance with this Agreement

NVAR-1017-2/01                Page 3 of 4                Landlord _____
                                                         Agent _____

B. Landlord must give __60__ days Notice with documentation in accordance with the terms of the Lease to terminate this Agreement in order to occupy the Premises. This Agreement terminates with the departure of the Tenant and return of the deposit, unless the Agent is requested to prepare the Premises for the return of the Landlord. Should Tenant fail to depart after receiving proper Notice, this Agreement terminates on the final day of the Notice period.

C. All representations of the Parties to this Agreement shall survive Termination of the Agreement

12. **Applicable Law:** The execution, interpretation and performance of this Agreement shall in all respects be and governed by the laws of the Commonwealth of Virginia. If any part of this Agreement shall be declared unenforceable, the remainder of the Agreement will continue in full force and effect.

13. **Fair Housing:** Landlord agrees that Agent shall manage the premises in accordance with all applicable Fair Housing Laws and Regulations and shall not discriminate against anyone because of race, color, religion, sex, national origin, age, familial status, sexual orientation or handicap as currently defined by law.

14. **Attorney's Fees:** In the event of any dispute, litigation or arbitration arising out of or relating to this Agreement, including non-payment of fees or amounts owed to Agent by Landlord, the prevailing party shall be entitled to recover all costs, including reasonable attorney's fees, incurred by the prevailing party.

15. **Headings:** The headings in this Agreement are for convenience and reference only, and shall not be used to define, limit or expand the meaning of any paragraph or provision.

16. **Virginia Residential Landlord Tenant Act:** Landlord has an ownership interest in _____ residential leased properties in Virginia. Landlord's properties ☐ are ☒ are not required to be covered under this Act. If not required, Landlord ☐ wishes or ☒ does not wish Leases to be administered under the Virginia Residential Landlord Tenant Act.

17. **Notices:** Any Notice to Landlord or to Agent required under this Agreement shall be served in writing, by sending such Notice to the addresses stated in this Agreement, or as later designated in writing.

18. **Additional Provisions** _____

_____

_____

Agent _____ Date 5/21/11
RentmyVAHome.com LLC
Name of Managing Company
9201 Peabody St
Address
Manassas VA 20110

7035013626
Phone                       Fax
RealtorJimDowns@Gmail.com
email

Landlord _____ Date
R Jackie
Landlord _____ Date
Sixpackards@yahoo.com
email

© 2001 Northern Virginia Association of REALTORS®, Inc.
This is a suggested form of the Northern Virginia Association of REALTORS®, Inc. ("NVAR"). This form has been exclusively printed for the use of REALTOR® and Non-Resident members of NVAR, who may copy or otherwise reproduce this form in identical form with the addition of their company logo. Any other use of this form by REALTOR® and Non-Resident members of NVAR, or any use of this form whatsoever by non-members of NVAR is prohibited without the prior written consent of NVAR. Notwithstanding the above, no REALTOR® or Non-Resident member of NVAR, or any other person, may copy or otherwise reproduce this form for purposes of resale.



computer generated using AutoContract™ v4.16 software, from AutoRealty Products, Inc., 1050 W. Pipeline, Suite 101, Hurst, TX 76053, (800) 322-1178
Installation of AutoContract™ is licensed for use to: Coldwell Banker Stevens, REALTORS, and is not transferable. Use by others is a violation of federal copyright law